Law Offices of Sara L. Bloom
1120 Huffman Rd.  Ste 24-785
Anchorage, AK 99515
(907) 519-3613
f(907) 345-8570
sara@907lawyer.com
Attorney for Plaintiff Kimberly Thacker

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AT ANCHORAGE

| | |
|---|---|
| KIMBERLY THACKER ("Plaintiff"), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> QUEST DIAGNOSTICS, INC. ("Defendant"), ) <br> ) <br> Defendant. ) <br> _____ ) | Case No.  3:20-cv-00283 |

**PLAINTIFF'S MEMORANDUM Of LAW IN SUPPORT OF PLAINTIFF'S MOTION TO FIND THAT DEFENDANT WAS PROPERLY NAMED AND/OR OTHER RELIEF**

Pursuant to the Federal Civil Procedure Rules 7, 15(c)(1) and the Misnomer

Doctrine, and the inherent powers of the Court, Plaintiff requests that the Court order that

Defendant Quest Diagnostics Incorporated (Quest Diagnostics Inc.") was Plaintiff's

former employer based on the evidence herein.  In the alternative, Plaintiff requests that

the court order Defendant to show cause as to why Defendant is not correctly named in

the Complaint. Should Defendant prove that Plaintiff's employer was Quest Diagnostics Clinical Laboratories, Inc., as they asserted in its answer and Corporate Disclosure Statement, rather than Quest Diagnostics Incorporated (Quest Diagnostics Inc."), the Plaintiff requests that the Defendant's name be amended and related back to the Original Complaint pursuant to Fed. R. Civ. P. 15(c)(1), and/or deem it a misnomer, to avoid any prejudice to Plaintiff, and allow Defendant to file an amended answer. In this case, the circumstances meet the requirements of the relation back pursuant to Rule 15(c)(1) and the misnomer doctrine. However, if Quest Diagnostics Inc. is Defendant's correct name, Plaintiff requests that Defendant be sanctioned appropriately for filing a fraudulent Answer and Corporate Disclosure Statement. The evidence identifies Plaintiff's employer only as Quest Diagnostics Inc. *See* Exs. 1-17.

**Federal Rule 15(c)(1)(C)**

Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations. *See Krupski v. Costa Crociere S.p.A.,* 560 U.S. 538, 541 (2010).

Federal R. Civ. P. 15(c)(1) states:

(1) ***When an Amendment Relates Back.*** **An amendment to a pleading relates back to the date of the original pleading when:**

(A) the law that provides the applicable statute of limitations allows relation back;

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

(Emphasis added). Alaska has a similar rule.[1]

In other words, 1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it. *Schiavone v. Fortune,* 477 U.S. 21, 29 (1986); *see also Craig v. United States*, 413 F.2d 854 (9th Cir. 1969).

Additionally, the second and third requirements must have been fulfilled within 120 days after the original complaint was filed, as prescribed by Federal Rule of Civil

---

[1] Like the Federal rule, Alaska Civil Rule 15(c) provides that whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Procedure 4(m). *See Hogan v. Fischer,* 738 F.3d 509, 517 (2nd Cir. 2013)(indicating that the fourth requirement is met when "`the second and third criteria are fulfilled within 120 days of the filing of the original complaint). This complaint was filed on November 6, 2020, well within 120 days.

The 9th Circuit found that Rule 15(c) notice is satisfied when the parties are so closely related in their business operations or other activities that the institution of an action against one provides notice of the litigation to the other. *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397 (9th Cir. 1984).

In *Korn*, the 9th Circuit held that there is a sufficient 'community of interest' between the related actors; the general sales agent, the owner of the ship, the operating agent for both the ship and the proper defendant, and the insurance company who handled personal injury claims against the cruise line from which to impute knowledge of the claim and of the lawsuit to the proper defendant within the relevant time period. *Id.*

The 9th Circuit has also held that procedural technicalities should not be used to deny a Title VII claimant the right to a judicial hearing on the merits. "In keeping with the remedial goals of the statute, we have repeatedly held that the statute itself, the procedural framework, and the pleadings must be liberally construed in favor of those who are alleged victims of discrimination." *Ramirez v. National Distillers & Chemical Corp.*, 586 F.2d 1315, 1320-21 (9th Cir.1978); *see also*, *Atonio v. Ward Cove Packing Co., Inc.* (9th Cir. 1982) (Initial charges filed with the EEOC gave the employer actual and constructive notice that employment discrimination charges were being instituted

against the employer, where the cannery was identified in the body of the charges showing it was operated by the employer, and the EEOC charges were mailed to the employer's office.)

In Thacker, Defendant informed Plaintiff, verbally and in writing, that she worked for Quest Diagnostics Inc. It specifically told Plaintiff that her employer was Quest Diagnostics Inc. in her employment letter, pay stubs, W-2s, emails, email addresses, performance evaluations, medical documents, etc. Ex. 1(a)-(d)- 8, 17; *see* Plaintiff's Declaration. Defendant Quest Diagnostics provided Plaintiff with a W-2 that gave the name, corporate address, and Federal Tax ID number of Quest Diagnostics Inc. When comparing the Federal Tax ID number on Plaintiff's W-2 with the SEC filings, it is evident that Quest Diagnostics Inc. was her employer. *See* Exs. 1(d)(Plaintiff's W-2); 17 (SEC document). The SEC document identifies the Federal Tax ID number for Quest Diagnostics Inc.'s subsidiaries, including Quest Diagnostics Clinical Laboratories, Inc. The Federal Tax ID number associated with Quest Diagnostics Clinical Laboratories, Inc. is different from the one listed on Plaintiff's W-2. As further support of Quest Diagnostics Inc. as Plaintiff's employer, there was nothing in her paperwork or verbal communication to her or her counsel that informed Ms. Thacker that she worked for anyone other than Quest Diagnostics Inc. *Id.* Quest Diagnostics counsel Fefferman also conversed with Alaska Wage and Hour and never informed Alaska Wage and Hour that Plaintiff worked for Quest Diagnostics Clinical Laboratories, Inc. Fefferman submitted

payroll documents to Alaska Wage and Hour, showing that Plaintiff worked for Quest Diagnostics Inc. *See* Exs. 15(a)-(c).

Defendant has not provided, nor has Plaintiff been able to discover any evidence to support that Plaintiff's employer was Quest Diagnostics Clinical Laboratories, Inc. and not Quest Diagnostics Inc. despite a request to do so. *See* Ex. 12(c), Bloom Declaration. Assuming that Quest Diagnostics Clinical Laboratories, Inc. is truly Plaintiff's former employer as Defendant claims in its Corporate Disclosure Statement and Answer filed with the court (Dckts 10, 11), Defendant is wholly responsible for this mistake.

Even conducting a Corporations search on the Alaska Corporations site, there is more than one subsidiary of Quest Diagnostics, although there is no corporation legally registered in Alaska called Quest Diagnostics Inc. However, both companies registered in Alaska with the name Quest Diagnostics have the same New Jersey corporation address[2] and resident agent, which is affiliated with Plaintiff's former employment.[3] *See* Exs. 14(a)-(c).

The President and CEO, General Counsel, and Senior corporate counsel, Fefferman, with whom undersigned counsel was negotiating an attempted settlement on the merits of Plaintiff's claims, had knowledge that Plaintiff was alleging a cause of action for discrimination, retaliation, and wrongful termination months before filing a lawsuit and even agreed to accept service on behalf of the company. *See* Exs. 9(a), 16(a)-

---

[2] 500 Plaza Drive, Secaucus, NJ 07094.
[3] Defense counsel pursuant to correspondence dated January 7, 2020, after the filing of Defendant's answer, states that Quest Diagnostics Clinical Laboratories, Inc. is a subsidiary of Quest Diagnostics, Inc. *See* Ex. 12(b).

(d). The Complaint and initial documents were emailed to Fefferman. Ex. 9(a). She or Hausmann, another Senior counsel, could have informed undersigned counsel that the name was incorrect on the pleadings. *See* Ex. 9(b). Counsel for Defendant Saade could have done the same. However, Defendant instead claimed that it sued the wrong employer and asserted affirmative defenses against Plaintiff and avoided answering the complaint on the merits. Should undersigned counsel have learned of, and provided evidence of this alleged mistake, she could have corrected it easily before filing the answer or refiled her charge of discrimination within the requisite time frame of 300 days. Without such advisement, there was only reason to believe that Quest Diagnostics Inc. was not Plaintiff's employer. Instead, Plaintiff is now forced to divert her attention away from the merits of her case and file this motion which could have easily been avoided. Counsel for Plaintiff even conversed with Defendant's counsel and agreed to an extension for Defendant's counsel to file Defendant's answer, but Defendant's counsel failed to bring up this issue, causing Plaintiff to be potentially harmed in light of the time required to sue based on the EEOC's 90-day right to sue letter. *See* Exs. 12(a), 13.

Defendant was also well aware that the EEOC's right to sue letter was issued to Plaintiff before she filed suit. Not only did undersigned counsel have direct contact with senior counsel for Quest Diagnostics where Fefferman agreed to accept service, but EEOC in August 2020 mailed Plaintiff's right to sue letter to General Counsel & Corporate Security William O'Shaughnessy[4] of Quest Diagnostics Inc. 500 Plaza Drive,

---

[4] Shaughnessy is the Deputy General Counsel for Quest Diagnostics Inc.

Secaucus, NJ 07094. *See* Ex. 13. The corporate filing for Quest Diagnostics Clinical Laboratories, Inc., as identified on the Alaska Corporations' website, states the same address as Quest Diagnostics corporate headquarters and lists Mr. O'Shaughnessy as the secretary of the corporation. *See* Exs. 13, 14.

Undersigned counsel also served the resident agent Corporation Services Company by certified mail, which is the same resident agent of Defendant's alleged proper name, Quest Diagnostic Clinical Laboratories, Inc. (there appear to be other such similar names such as Quest Diagnostic Health and Wellness). Exs. 10,11, Bloom Declaration. For all of these reasons, 15(c)(1)(C)(i) has been met: The alleged proper Defendant received such notice of the action and was not prejudiced. Rather, Plaintiff is subject to prejudice with the assertions as contained in Defendant's answer.

The requirement contained in Federal R. Civ. P. 15(c)(1)(C)(ii) also have been met as Defendant knew of Plaintiff's allegations of discrimination and wrongful termination in late April or early May 2020 through correspondence with the President/CEO and the General Counsel. *See* Exs. 16(a)-(d). Senior counsel Fefferman also knew of the pending lawsuit as settlement negotiations failed, and she agreed to accept service of the complaint against Quest Diagnostics. A certified copy was also sent to the resident agent for Quest Diagnostics Clinical Laboratories, Inc., and senior counsel acknowledged receipt and informed undersigned counsel that they retained Renea Saade. See Exs. 9(a)-(b), 10, 11, Bloom Declaration.

This pleading and the proposed amendment are also filed within 120 days, satisfying the fourth requirement.

Defendant should be held accountable for this deliberate subversion and should have informed undersigned counsel of this alleged mistake and not defended this case on those affirmative defenses. Defendant stated in Plaintiff's hire letter that Quest Diagnostics Incorporated hired her and put that name on her paystubs. It is arguably a violation of Alaska's Wage and Hour law when Defendant put Quest Diagnostics Incorporated on her pay stubs if that was not her employer. AS Sec. 23.10.015. (False Representations); AS Sec. 23.10.100. Employer to keep records. AS Sec. 23.10.110. Remedies of employee; attorney fees; offers of judgment; settlement; waiver. *See also*, *Noori v. Countrywide Payroll & HR Solutions, Inc.*, 43 Cal. App. 5th 957 (2019).

**Misnomer Doctrine**

Plaintiff also argues that the misnomer doctrine applies. The misnomer doctrine is where the correct party was served, so the party before the court is the one plaintiff intended to sue, but the party's name or description in the complaint is deficient in some respect. Under those circumstances, an amendment merely correcting that description allows for the correction to relate back to the original complaint, as long as it satisfies the standard in the first sentence of Rule 15(c). 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1498, at 130 (1990) (footnotes omitted). The misnomer doctrine is applicable here because the amendment required in

this case is restyling a party to reflect its correct name (should some evidence supporting Defendant's claim exist).

When a plaintiff corrects a misnomer, an amendment is possible even after the statute of limitations expires. A "misnomer" as a "mistake in name," is an incorrect name to the person in an accusation, indictment, pleading, deed, or other instrument, and is technical in nature. *See Liss v. Seamark Foods*, 555 S.E.2d 365 (N.C. Ct. App. 2001)(which found a misnomer when the plaintiff originally sued "Seamark Foods" after a jar of the company's oysters landed him in the local medical center. After the limitations period expired, the plaintiff moved to correct the defendant's name to reflect the defendant's official corporate name, "Seamark Enterprises, Inc." Seamark Enterprises, Inc. operated under the assumed name Seamark Foods and the president of Seamark Enterprises, Inc., had received service of the original complaint against "Seamark Foods" at Seamark Enterprises, Inc.'s proper corporate address. In *Taylor v. Hospice of Henderson Cty., Inc.*, 668 S.E.2d 923 (N.C. Ct. App. 2008), the Court considered a misnomer when the plaintiff initially sued "Four Seasons Hospice & Palliative Care, Inc. allowed the plaintiff to change it to "Hospice of Henderson County, Inc. d/b/a Four Seasons Hospice & Palliative Care" as "Hospice of Henderson County, Inc." did business under the name "Four Seasons Hospice & Palliative Care," and the State's records revealed that there was no North Carolina entity known as "Four Seasons Hospice & Palliative Care, Inc."

*Thacker v. Quest Diagnostics*
Case No. 3:20-cv-00283
Memorandum in Support

10

Case 3:20-cv-00283-JMK   Document 14   Filed 01/20/21   Page 10 of 16

The 9th Circuit and the Alaska Supreme court held that amendments adding the representatives of deceased persons' estates as defendants may relate back to the date of the original pleadings, even if the original pleading erroneously named only the decedent as the defendant. *Hamilton, et al. v. Blackman*, 915 P.2d 1210 (Alaska 1996); *see also*, *Santana v. Holiday Inns, Inc.,* 686 F.2d 736, 739 (9th Cir.1982) (allowing relation back where the original claim was barred by the statute of limitations and noting that the lack of personal or subject matter jurisdiction for the original pleading does not preclude relation back).[5]

The "touch-stone" of the relation back doctrine is fairness; that is, whether the substituted party has fair notice of the cause of action and whether its rights will be prejudiced if the delay is allowed. *Hamilton* at 1217 citing *Farmer v. State,* 788 P.2d 43, 47 (Alaska 1990). The rules should also be liberally construed to ensure that no plaintiff is deprived of a hearing on the merits solely because of the intricacies and technical limitations of pleading. *Id.* Although the Alaska supreme court has stated in dictum that Civil Rule 15(c) should be strictly construed, the courts have subsequently retreated from that position. *Id.* at 48 & n. 15. There is fairness to the incoming defendant when it had notice of the original complaint. *Hamilton* at 1217-8, citing *Farmer,* 788 P.2d at 47; 6A Wright, Miller & Kane, *Federal Practice and Procedure* § 1498, at 106 (allowing

---

[5] The only difference between Federal Rule 15(c) and Alaska Rule 15(c) is that the federal rule allows a relation back where the original claim was barred by the statute of limitations, and Alaska does not.

amendments changing parties to relate back prevents a claim from being defeated on a "technical basis" when it should have been decided on its merits).

**Equitable Estoppel**

The doctrine of equitable estoppel provides additional grounds for ruling in Plaintiff's favor and awarding fees and costs. Equitable estoppel arises when an individual by his acts, representations, admissions, or silence, or when he had a duty to speak, intentionally or through culpable negligence, induces another to believe that certain facts exist, and that the other person rightfully relies on those facts to his detriment. Thus, the party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse, and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading. *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.,* 467 U.S. 51, 59 (1984) citing *Wilber National Bank* v. *United States,* 294 U. S. 120, 124-125 (1935).

The doctrine of equitable estoppel often referred to as fraudulent concealment, is based on the principle that a party "should not be allowed to benefit from its own wrongdoing." *Collins v. Gee West Seattle LLC,* 631 F.3d 1001, 1004 (9th Cir.2011). In the 9th Circuit, the plaintiff carries the burden of pleading and proving the following elements of equitable estoppel:

(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by

the relying party, and (4) detrimental reliance. *Estate of Amaro v. City of Oakland,* 653 F.3d 808, 813 (9th Cir. 2011).

When estoppel is based upon an affirmative representation and an inconsistent position subsequently taken, it is not necessary that the party to be estopped have any intent to mislead or deceive the party claiming the estoppel, or that the party to be estopped even be aware of the falsity of the representation when it was made. *Meacham v. Board of Educ.,* 297 S.E.2d 192 (N.C. Ct. App. 1982).

By Quest Diagnostics Inc. as holding itself out as Plaintiff's employer and paying her wages, Quest Diagnostics Inc. was Plaintiff's employer. According to Blacks Law Dictionary, an Employer is one who employs the services of others; one for whom employees work and who pays their wages or salaries. Ms. Thacker's hire letter says Quest Diagnostics Inc hired her, and Quest Diagnostic Inc. paid her and has its Federal Tax ID on her W-2. *See* Ex. 1(d), 17. Quest Diagnostics Clinical Laboratories, Inc.'s Federal Tax ID is not on Plaintiff's W-2. *See* Ex. 17. No one mentioned to Plaintiff verbally or in writing or to the State of Alaska when it handled a wage violation or to her counsel during the numerous interactions undersigned counsel had with Quest Diagnostics company officials and attorneys that Quest Diagnostics Clinical Laboratories, Inc. was Plaintiff's employer. There is simply no evidence that she worked for anyone other than Quest Diagnostics Inc. Plaintiff is baffled why Defendant would advance an argument but speculates that it should not have been acting as Defendant's employer in the State of Alaska as it was not legally registered in Alaska, or perhaps, it

wants to argue that FMLA is not applicable. Whatever the reason, the evidence shows that Quest Diagnostics Inc. was Plaintiff's employer. Either Defendant has misled Plaintiff into believing that she worked for Quest Diagnostics Inc., or Defendant has perpetrated a fraud on this court.

Not only did Quest Diagnostics know of the original pleading and Plaintiff's claims at the time of the filing of the original pleading, but it continued to perpetuate the fraud by not informing Plaintiff or her counsel prior to Defendant filing its answer, an answer that blatantly states that Quest Diagnostics Inc. was never her employer and gives the impression that it can easily wipe its hands of this lawsuit and not respond to Plaintiff's allegations.

For these reasons, Plaintiff respectfully requests that should Defendant show that Quest Diagnostics Clinical Laboratories, Inc. is the correct name of Defendant, that the changes to the caption and introduction be changed and the amendment be related back to the original complaint without causing harm to the Plaintiff.[6]

Saade requested an extension to file Defendant's answer on December 6, 2020, and a second extension on December 28, 2020. *See* Ex 12(a). However, once this issue was discovered, Plaintiff or her counsel should have been informed to make the change prior to the filing of the answer.[7] Although Defendant's counsel claims that she does not oppose the filing of this motion, it still needed to be filed to prevent any prejudice and

---

[6] The Plaintiff attaches a proposed Complaint.
[7] On January 7, 2021, undersigned counsel requested Defendant's counsel for documentation showing that Quest Diagnostics Clinical Laboratories, Inc. is the proper Defendant as all evidence dictates otherwise, but undersigned counsel has not yet received a response. Ex. 12(c).

injustice against Plaintiff. *See* Ex. 12(b) (email from Renea Saade not opposing the motion and indicating that she was unaware of the issue when requesting the extension to file her answer). Plaintiff therefore requests Defendant to pay costs and fees for filing this motion. Counsel for Plaintiff has spent a total of 40.5 hours on this motion, memorandum of law, proposed order, research, legal research, declarations, and attaching exhibits as well as consulting with officials with the State of Alaska, Social Security Administration, and EEOC.

However, Defendant has failed to provide any evidence that Quest Diagnostics Inc. was not Plaintiff's employer, or more importantly that any other Quest entity or subsidiary was in fact her employer. This question must be first answered. Every year Plaintiff's employer gave her a W-2 form which states that Quest Diagnostics is her employer, the Federal Tax ID number is 16-1387862, and the corporate address is 500 Plaza Drive Secaucus, New Jersey 07094. *See* Ex. 17(a). According to the SEC, Quest Diagnostics Inc.'s Federal Tax ID number is 16-1387862 and its address is 500 Plaza Drive Secaucus, New Jersey 07094. Should Quest Diagnostics Inc., in fact, be her employer, Defendant should be appropriately sanctioned for filing a fraudulent answer.

WHEREFORE, Plaintiff respectfully requests the court to deem Quest Diagnostics Inc. as Plaintiff's employer as it meets the definition of her employer. However, if Defendant can prove Quest Diagnostics Clinical Laboratories, Inc. is the correct name of Defendant, and only if that is, in fact, the correct name, to change Defendant to Quest Diagnostics Clinical Laboratories, Inc. in the caption and introduction of the Complaint

pursuant to Rule 15(c) and/or the misnomer doctrine and relate it back to the original complaint to avoid any statute of limitations or administrative deadline issues, and for Defendant to pay costs and fees for Plaintiff's necessary filing of this motion as a result of Defendant and counsel of Defendant's actions by fraudulently informing Plaintiff that Quest Diagnostics Incorporated (Inc.) was her employer and by failing to inform Plaintiff's counsel prior to the filing of the answer so she could cure the problem prior to the filing of the answer which would be answered on the merits.

Respectfully submitted,

Dated 20th day of January 2021:

*/s Sara L. Bloom*
Sara L. Bloom
Alaska Bar No. 1509071
Attorney for Plaintiff